FILED'07 JAN 08 17:18USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LYLE WORKMAN, | |
| Plaintiff, | CV-06-47-CO |
| v. | FINDINGS AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

**MERRILL SCHNEIDER**
P.O. Box 16310
Portland, Oregon 97292-0310

    Attorney for plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 SW Third Ave, Suite 600

1 - FINDINGS AND RECOMMENDATION

Portland, Oregon 97204-2902

**JEFFREY BAIRD**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Ave, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff Lyle Workman brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Commissioner moves the court to remand for further proceedings to correct errors in her decision (docket # 12). Workman opposes additional proceedings and seeks a remand for the calculation and immediate award of benefits. The Commissioner's motion to remand for further proceedings should be granted.

## BACKGROUND

Workman was born August 31, 1959. He has the equivalent of a high school education plus training as a heavy equipment operator and community college classes in computer science and electronics. He worked as a delivery driver, sole cementer at a boot manufacturing plant,

2 - FINDINGS AND RECOMMENDATION

groundskeeper, assembly/press brake operator, telephone technical support worker and self-employed computer builder.

Workman stopped working because work slowed down and he needed time to care for his developmentally disabled twin boys. He continues to volunteer part time for a nonprofit program providing food to the needy one day a week.

Workman filed his applications with an effective filing date of November 5, 2001, alleging disability beginning January 1, 1998, due to diabetes, heart problems, kidney problems, anxiety, chest pain, shortness of breath and bipolar disorder. He met the insured status requirements for a claim under Title II through June 30, 1998. He must establish that he became disabled on or before that date to prevail on his DIB claim.

The ALJ initially denied Workman's concurrent applications in a decision issued May 19, 2003. The Appeals Council vacated that decision and remanded for additional proceedings to correct specified errors. After additional administrative proceedings, a different ALJ denied Workman's concurrent applications again on July 27, 2005. That decision is now before this court. The Commissioner concedes that the decision cannot be upheld and seeks a remand for corrective administrative proceedings.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

3 - FINDINGS AND RECOMMENDATION

The Commissioner uses a sequential process of up to five steps for determining whether a person is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Workman contends the ALJ erred in evaluating the evidence and in his conclusions at steps three, four and five of the sequential process.

At step three, the Commissioner must determine whether the claimant has a combination of impairments that meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, there is a conclusive presumption that the claimant is disabled. The criteria for these listed impairments, also called Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p.

At step four, the Commissioner must determine whether the claimant retains the RFC to perform work he has done in the past. If he can perform his past work, the Commissioner will find that he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the adjudications proceeds to step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*,

4 - FINDINGS AND RECOMMENDATION

482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

The ALJ found that Workman's ability to work is impaired by diabetes with peripheral neuropathy in his feet, coronary artery disease with occasional angina, status post myocardial infarction and coronary angioplasty, left shoulder tendinitis, depression and a personality disorder.

At step three, the ALJ determined that Workman's impairments do not individually or in combination meet or equal the criteria for Listings 9.08, 4.04, 1.02, 12.04, 12.08 or any other section of the Listing of Impairments.

The ALJ assessed Workman's RFC as follows:

> The claimant retains the residual functional capacity to perform simple, routine repetitive work. He can lift and carry ten pounds frequently and twenty pounds occasionally. Furthermore, during an eight-hour day he can sit, stand and walk for up to six hours. The claimant is limited to only occasional climbing and crawling, and occasional overhead reaching with his left upper extremity, and he should avoid exposure to hazardous conditions. Finally, the claimant should have no contact with the general public and only limited interactions with supervisors and co-workers.

Tr. 28.[1]

At step four, the ALJ concluded that Workman's past work in the occupations of boot sole cementer and brake press operator did not require him to perform activities precluded by his RFC. Accordingly, he concluded that Workman was not disabled because his impairments did not preclude him from performing his past relevant work.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket #10).

5 - FINDINGS AND RECOMMENDATION

In the alternative, the ALJ proceeded to step five and found that Workman's RFC did not preclude him from doing other work that exists in the national economy. The ALJ drew examples of such work from the testimony of the vocational expert (VE), including small parts assembler and packager assembler.

## STANDARD FOR REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002) and *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985); *Moisa v. Barnhart,* 367 F.3d 882, 886-87 (9th Cir. 2004).

The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

## DISCUSSION

Workman contends the court should order immediate payment of benefits because further proceedings would serve no useful purpose. He contends the ALJ improperly rejected evidence which, if credited as true, would establish that he is disabled. Specifically, Workman asserts that the ALJ improperly rejected the opinions of Christy Risinger, M.D., Luke Patrick, Ph.D., David Gostnell, Ph.D. and Lisa Puma, PMHNP.

6 - FINDINGS AND RECOMMENDATION

The Commissioner concedes that the ALJ did not adequately evaluate the findings and opinions of Dr. Risinger and Nurse Practitioner Puma. She does not concede the other errors asserted by Workman and contends that the ALJ should be permitted to correct the errors in further proceedings after remand.

I.   **Dr. Risinger**

Dr. Risinger was one of several doctors who treated Workman at Providence Ambulatory Care & Education Center (PACE). Workman established care with her in July 2002. Thereafter, she was Workman's primary care physician and treated a variety of ailments, including swelling in the legs, chest pain, shoulder pain, diabetes mellitus with related neuropathy and blood sugar control problems, knee pain, hypertension, rectal bleeding and acid reflux. Workman always presented with "a multitude of complaints . . . so much so that it was difficult to narrow the focus of the exam." Tr. 526, 527, 530.

In August 2002, Dr. Risinger conferred with Lisa Puma, PMHNP, after Workman reported receiving mental health care from her and others at Cascadia Behavioral Health Care. Dr. Risinger suggested an SSRI medication to treat the depression and anxiety symptoms Puma described. Generally, however, Dr. Risinger deferred to Puma for management of Workman's mental health care. Tr. 526.

While treating Workman over the ensuing months, Dr. Risinger described his mental status in generally mild terms, indicating that he was alert and appropriate with grossly normal mental status examinations. He sometimes had elements of anxiety in his responses, grandiose ideas and thoughts, and blamed others for his complaints. Workman tended to express mild vague threats and

numerous excuses why he could not comply with prescribed medication. He was generally well groomed and interactive, but expressed antisocial ideas.

In December 2004, Dr. Risinger observed that Workman was healthy appearing and in no distress. In February 2005, Dr. Risinger found him narcissistic at times, but easily redirected. In March 2005, Dr. Risinger noted that her mental status examination was grossly normal, but that Workman demonstrated narcissistic personality traits.

In June 2005, in the same week as the ALJ hearing, Dr. Risinger completed a worksheet prepared by Workman's attorney. She indicated that Workman had diagnoses of coronary artery disease, diabetes mellitus, hypertension and a personality disorder. The worksheet included estimates of Workman's physical residual functional limits and Dr. Risinger's opinion of his limitations in the four general categories of mental function known as the B criteria, *i.e.* difficulties maintaining activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation in work like settings.

Regarding mental function, Dr. Risinger opined that Workman had a personality disorder with pathologically inappropriate hostility. She assessed Workman's limitations in the B criteria as follows: moderate restriction of activities of daily living; marked impairment in maintaining social functioning; marked limitations in concentration, persistence or pace; and, insufficient information to support episodes of decompensation.

Workman argues that Dr. Risinger's opinion establishes disability under section 12.08 of the Listing of Impairments regarding *Personality Disorders*. A presumptively disabling level of severity is met when the requirements of both paragraphs A and B of Listing 12.08 are satisfied. Dr. Risinger endorsed 5 alternative grounds, each of which would satisfy paragraph A. Tr. 706. Her finding of

8 - FINDINGS AND RECOMMENDATION

two categories of marked impairment in the B criteria satisfies paragraph B. Accordingly, Dr. Risinger's worksheet appears to satisfy Listing 12.08. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08.

When an ALJ fails to properly evaluate a medical opinion, as the Commissioner concedes in this case, the court has discretion to credit the findings and opinions as a matter of law in appropriate circumstances. *Hammock v. Bowen*, 879 F.2d 498, 503 (9th Cir. 1989); *Benecke v. Barnhart*, 379 F.3d at 594. Crediting Dr. Risinger's findings regarding the B criteria is problematic in the present circumstances, because to do so would require the court to reject the findings of mental health providers who examined Workman and reached contrary conclusions.

In February 2003, Luke Patrick, Ph.D. performed a neuropsychological evaluation including a review of records, clinical interview and psychometric testing. He diagnosed a personality disorder, but concluded that Workman "possesses the intellectual capacity to perform a variety of work tasks, and is not believed to be impaired with regard to understanding and remembering instructions or sustaining concentration, attention and persistence." Tr. 489. Dr. Patrick found marked impairment in interacting with coworkers or the general public, but opined that Workman could interact with supervisors satisfactorily. Tr. 493-94. Accordingly, Dr. Patrick's findings would not support presumptive disability under Listing 12.08.

In March 2005, David Gostnell, Ph.D., performed a similar neuropsychological evaluation. Dr. Gostnell found only moderate impairment in Workman's ability to interact with coworkers and the public and marked impairment in interactions with supervisors. These findings would not rise to the level required for Listing 12.08. Tr. 583-601.

After reviewing the medical and mental health records in the file, the medical expert who testified at the first hearing noted significant discrepancies regarding Workman's level of mental

9 - FINDINGS AND RECOMMENDATION

impairment. He testified that Workman had mild difficulties in maintaining activities of daily living, moderate difficulties in maintaining social functioning, mild limitations in concentration, persistence or pace and no evidence of episodes of decompensation. Tr. 756-57.

The evaluations of Drs. Patrick and Gostnell are based on accepted diagnostic techniques including thorough examinations with testing. The court is satisfied that it would be an inappropriate exercise of discretion to reject their conclusions as a matter of law simply because the ALJ failed to adequately explain his reasons for discrediting Dr. Risinger's findings and opinions. Instead, the court should permit an ALJ to explain how he resolves the conflicts in the various medical opinions in context with the record as a whole.

Workman contends that Dr. Risinger's opinion supports an immediate award of benefits under the so-called *Harman* test. Under *Harman*, the court should direct an immediate award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting probative evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman v. Apfel*, 211 F.3d at 1178 citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Even if Dr. Risinger's worksheet were credited as a matter of law, it would not require a finding of disability under *Harman*. It is not clear from the record that the ALJ would be required to find Workman disabled because Dr. Risinger's findings are contradicted by other providers who were well equipped by training and information to understand Workman's mental health.

Moreover, Dr. Risinger's opinion does not resolve all outstanding issues necessary for a determination of disability to be made. To establish disability, Workman must show that a disabling level of severity has persisted for a continuous period of 12 months. Dr. Risinger's worksheet findings do not purport to establish the duration requirement.

In summary, Dr. Risinger's opinion should not be credited as a matter of law, but the ALJ should reevaluate her findings in context with the entire record to accurately determine Workman's mental impairments. Even if credited, Dr. Risinger's opinion would not provide a basis for denying the Commissioner's motion because it does not compel an immediate award of benefits.

### II.  Nurse Practitioner Puma

Workman began mental health treatment at Cascadia in November 2001. He received weekly counseling from crisis counselor David Kohler and saw Nurse Practitioner Puma at four to five week intervals for medication management. Tr. 252.

In December 2001, Nurse Practitioner Puma performed a psychiatric evaluation consisting of a clinical interview and mental status examination. Puma did not review records or administer psychometric testing. Workman reported a long history of prominent delusions and hallucinations. Puma's mental status examination suggested below average intelligence, depressed mood and anxiety. Puma diagnosed paranoid schizophrenia and dysthymic disorder. Tr. 239-45.

In December 2002, Puma prepared a worksheet titled Rating of Impairment Severity Report on which she marked boxes indicating the level of Workman's impairment in each of the four B criteria categories. She indicated marked impairment in restriction of activities of daily living, extreme impairment in social functioning, marked impairment in concentration, persistence or pace and multiple extended episodes of decompensation. These findings were based primarily on her

11 - FINDINGS AND RECOMMENDATION

conviction that Workman suffered from paranoia, hallucinations and delusional thinking due to schizophrenia. Tr. 468-69.

All other mental health providers agreed that a diagnosis of schizophrenia was not supported by the record. Dr. Patrick found that the wide variety of perceptual distortions and paranoid ideation Workman endorsed resulted from odd and eccentric personality characteristics rather than active psychosis associated with schizophrenia or other psychotic disorder. Tr. 485. Duane Kolilis, Ph.D., evaluated Workman in January 2002 and did not find psychosis. Dr. Kolilis attributed much of Workman's asserted limitation to less than forthright effort and attempts to emphasize his pathology. Tr. 252-56. Dr. Gostnell did not diagnose a psychotic disorder. Tr. 583-98. The medical expert testified that the total picture indicated that Workman was not out of contact with reality or suffering from psychosis. Tr. 762.

The ALJ mentioned Puma's treatment records briefly, but did not articulate reasons for discounting her findings, and the Commissioner concedes that this was not an adequate evaluation. As described previously, the court has discretion to credit such improperly ignored findings as a matter of law in appropriate circumstances. *Hammock v. Bowen*, 879 F.2d at 503; *Benecke v. Barnhart*, 379 F.3d at 594.

In order to credit Puma's findings, the court would have to reject these well-supported findings of Drs. Patrick, Kolilis and Gostnell and the testimony of the medical examiner. The prophylactic purposes of the crediting as true rule do not suggest that it should be applied in a manner that requires the court to discredit other probative evidence that is consistent with the record as a whole. Instead the court should permit the ALJ to explain how he resolved the conflicts in all the evidence of Workman's mental limitations, including the opinion of Nurse Practitioner Puma.

As with Dr. Risinger's opinion, Puma's findings do not compel an immediate award of benefits under the *Harman* test, because they are contrary to the findings of the other mental health experts in the record. Even if the ALJ believed Puma's findings, they would not compel a disability determination until the ALJ reconciled the contrary evidence and established that her findings pertained for the required 12 month period.

### III. Remaining Contentions

Workman's remaining contention is that the ALJ elicited testimony from the VE with hypothetical questions that did not accurately reflect all of his impairments. When an ALJ elicits testimony from the VE based on a hypothetical question that does not accurately reflect all the claimant's limitations, the VE's testimony "has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F2d 841, 850 (9th Cir. 1991).

Workman objects that the hypothetical questions used by the ALJ did not reflect all of the psychological limitations in the opinions and findings of Dr. Risinger and Nurse Practitioner Puma. For the reasons described previously, these opinions and findings must be evaluated in further proceedings before Workman's psychological limitations can be accurately determined.

Workman objects that the hypothetical questions did not reflect the findings of marked mental impairments in the opinions of Drs. Patrick and Gostnell. As described previously, Drs. Patrick and Gostnell contradict each other regarding the areas of function that are markedly impaired. Where Dr. Patrick opined that Workman's ability to interact with coworkers and the general public was markedly impaired, Dr. Gostnell found this area only moderately impaired. Dr. Gostnell found Workman's ability to work with supervisors markedly impaired, but Dr. Patrick found that area only

moderately limited. Tr. 493-94, 599-601. The ALJ could not reasonably credit both opinions or craft a hypothetical question that accurately reflected both sets of findings.

Workman also objects because the ALJ's hypothetical questions did not include limitations for deficiencies in concentration, persistence or pace. Dr. Patrick opined that Workman "is not believed to be impaired with regard to understanding or remembering instructions, sustaining concentration attention and persistence." Tr. 489. Dr. Gostnell obtained test results and clinical findings indicating that Workman's ability in attention, concentration, tracking and pace were in the normal range. Tr. 590, 594.

Workman also contends the hypothetical questions failed to accurately reflect his physical limitations. Specifically, he contends the hypothetical questions should have reflected the lifting limitations in Dr. Risinger's worksheet. The ALJ's hypothetical limitation reflected Dr. Risinger's opinion that Workman could lift and carry 10 pounds frequently. Tr. 707, 818. The ALJ differed with Dr. Risinger's opinion that Workman could not occasionally lift up to 20 pounds. There is no vocational testimony indicating that this minor difference would preclude Workman from engaging in any type of work. The ALJ can correct this error on remand by formulating a proper hypothetical question and obtaining new vocational testimony.

Workman objects that the ALJ's hypothetical question did not include a limit of standing for less than two hours, based on Dr. Risinger's opinion. Dr. Risinger's worksheet was somewhat ambiguous on this point because she admitted that it was unknown how the neuropathy in his feet would affect his ability to stand and/or walk and failed to respond when asked "If less than 2 hours, how many hours can Mr. Workman stand and/or walk." Tr. 704, 707. Moreover, even if Workman

is limited to standing less than two hours, this limitation has not been presented to a VE to determine whether it would preclude all work.

Finally, Workman asserts that the VE's testimony establishes disability based on alternative hypothetical limitations. The VE testified that a person who needed to elevate his legs 15 to 20 minutes each hour would be unable to maintain employment. Tr. 821. Workman contends this testimony establishes that he is disabled. This hypothetical limitation is contrary to Dr. Risinger's opinion that Workman did not need to elevate his feet periodically throughout the day or require unscheduled breaks during an 8-hour workday. Tr. 704.

The VE also testified that a person who lost productivity amounting to two or more days per month from inability to tolerate the demands of work, inability to deal with it mentally or inability to work due to physical problems would not be able to maintain employment. Tr. 820. Workman contends that this limitation establishes that he is disabled. This hypothetical limitation is contradicted by Dr. Risinger's opinion that she would not expect Workman to miss more than two days a month from even a sedentary job. Tr. 708.

In summary, even if Workman is correct that the ALJ's hypothetical questions did not accurately reflect all of his impairments, further administrative proceedings would be necessary before a disability determination could be made. The alternative hypothetical questions that elicited disability opinions from the VE include limitations that are contrary to Dr. Risinger's opinion and the record as a whole. The ALJ must reconcile the discrepant opinions of mental health experts and explain the conclusions he achieves. He must formulate an accurate RFC assessment and elicit vocational testimony based on a hypothetical question that accurately reflects all of Workman's limitations.

15 - FINDINGS AND RECOMMENDATION

Further proceedings will permit the Commissioner to reevaluate the evidence, obtain additional evidence as necessary, arrive at an accurate RFC assessment and elicit testimony from a vocational expert based on hypothetical assumptions that accurately reflect all of Workman's limitations. A remand for corrective proceedings is appropriate where such proceedings will serve a useful purpose. *Harman v. Apfel,* 211 F.3d at 1178; *Rodriguez v. Bowen,* 876 F.2d at 763. The rare circumstances in which additional investigation or explanation by the agency is unnecessary are not present here. *Benecke v. Barnhart,* 379 F.3d at 595.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for remand (docket # 12) should be granted. The Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with these findings.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual

16 - FINDINGS AND RECOMMENDATION

determinations of the Magistrate Judge will be considered a waiver of a party's right to <u>de novo</u> consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___ day of January, 2007.

_____
John P. Cooney
United States Magistrate Judge